**Affirm and Opinion Filed March 31, 2020**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-19-00610-CV

## VONOCOM, INC. AND IBRAHIM QATTAN, Appellants
## V.
## ADVOCARE INTERNATIONAL, LP, Appellee

**On Appeal from the 429th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 429-02966-2016**

## MEMORANDUM OPINION
Before Justices Molberg, Reichek, and Evans
Opinion by Justice Molberg

Vonocom, Inc. and Ibrahim Qattan appeal the trial court's order granting

AdvoCare International, LP's (AdvoCare) motion for partial summary judgment and

dismissing with prejudice their counterclaims for breach of contract and economic

duress/coercion. For the reasons set forth below, we affirm the trial court's

judgment.

## BACKGROUND

AdvoCare sells energy, weight-loss, nutrition, and sports performance

products through independent distributors. When Quattan became an independent

distributor for AdvoCare products in January 2013, he entered into a distributor agreement that, among other things, prohibited the sale of AdvoCare products "in an unauthorized manner (on Ebay, Craigslist, Amazon or using any other sales method that is not in accordance with the AdvoCare Policies and Procedures)." Quattan sold AdvoCare products through Vonocom, a company he established. Appellants do not dispute that Vonocom sold AdvoCare products on Amazon.[1] On June 28, 2016, AdvoCare's counsel, Sean Lemoine, sent Quattan a "cease and desist" letter regarding appellants' alleged breaches of the distributor agreement. The cease and desist letter stated:

> We are aware that you have been illegally selling AdvoCare products on Amazon.com ("Amazon") for several years. You also induce AdvoCare representatives to breach their contracts in order to obtain product to continue your illicit activities. You must immediately cease and desist from this conduct, or AdvoCare will be forced to file a lawsuit against you.
>
> You have twice entered into an agreement to distribute AdvoCare products, so you have already agreed to—and violated— AdvoCare's Policies, Procedures, and Compensation Plan. [I have] attached your most recent Distributor Agreement, which incorporates the Policies and Procedures that were in force when you were most recently terminated from AdvoCare (collectively, the "Contract"). As you are aware, it is a breach of the Contract for an AdvoCare distributor to (1) advertise or sell AdvoCare products on auction websites (including, but not limited to, Amazon) and (2) supply any other person or entity with AdvoCare

---

[1] In their first amended rule 13 motion and counterclaims, appellants state, "None of the Defendants other than Vonocom sold [AdvoCare] products on a website," and "Vonocom ceased to sell AdvoCare products over the Amazon website . . . ."

products with the knowledge or inference that those products will be sold in an unauthorized manner.

* * *

. . . As of the date of this letter, you offer at least 29 different AdvoCare products for purchase through the Amazon Account . . . . In the last several years, however, we have evidence from Amazon that you have sold millions of dollars of AdvoCare's products through this e-commerce site.

We are also aware of your previous violations of AdvoCare's agreements. To refresh your memory, you were terminated in 2013 for numerous violations of your Contract. At the time, your fraudulent conduct resulted only in your termination from AdvoCare, though such conduct remains legally actionable. It is clear that AdvoCare's warning to you has gone unheeded, and you intend to continue your illicit conduct, increasing your legal exposure and resultant damages to AdvoCare. Further you intend to induce yet more AdvoCare representatives to breach their contracts dragging them into your illegal activities.

We demand you immediately cease and desist your illicit behavior and not compound your errors by simply attempting to create additional sham accounts, either through AdvoCare, Amazon, or any other portal. We would also encourage you not to lead others into litigation by encouraging them to provide you with AdvoCare product, or sell products for you. While I am sure the individuals you have manipulated have no interest in becoming co-defendants with you, any actions taken by them to further your schemes may subject them to legal action as co-conspirators.

Because AdvoCare now anticipates litigation against you, you are advised not to delete, destroy, or manipulate any of your electronic devices, including, but not limited to, smart phones, laptops, and/or desktop computers. This also applies to taking such steps as attempting to clear out your email accounts, whether cloud-based or associated with your companies YYB Tec-Source, Inc., Borders Connection, Inc., Vonocom, Inc., or Community Voice.

You must respond to this letter no later than 5:00 p.m. CST on Tuesday[,] July 5, 2016. Confirm to us that you will discontinue

all sales of AdvoCare products, and turn over to us all such products currently in your possession. You are advised that AdvoCare will also seek its attorneys' fees, should it be forced to correct your behavior through litigation.

Appellants' counsel, Chris Wynne, acknowledged receipt of the cease and desist letter in a July 1, 2016 email to Lemoine. A series of emails between Wynne and Lemoine ensued. On July 5, Wynne advised Lemoine that Vonocom and Quattan, among other related entities:

> . . . have ceased selling Advocare [sic] products on Amazon if they have done so in the past. They also have no intention to sell any Advocare product in the future. Finally, there should be no Advocare product on their Amazon store(s) as of now.
>
> Please confirm receipt or *let me know if you need anything else* to settle this matter. If not, please send me a settlement agreement.

(Emphasis added.) On July 5, Lemoine responded in two sentences, "What about who he bought it from? Not good enough for him to stop selling." The following day, Wynne expressed his client was "amenable to a settlement to save costs" and he expressly proposed an offer of settlement:

> Let me clarify that my client is amenable to a settlement to save costs. . . . [T]he offer to settle this matter is that my client will agree to not sell any Advocare product in the future. This offer expires on Monday July 11, 2016 5PM [sic] Central.

In counsels' email correspondence from July 1 through July 5, only Wynne mentioned the possibility of a "settlement." On July 7, Lemoine put the brakes on Wynne's attempt to characterize the parties' previous emails as settlement discussions, clarifying:

We are obviously not on the same page. AdvoCare has authorized us to file suit against Mr. Qattan and Vonoco[m], [and others]. If he is not willing to disclose every AdvoCare representative he and his entities are buying product from then there is no chance for a settlement. We will either get the information in discovery or Mr. Qattan and his entities can give it to us voluntarily and try to work out a settlement. You have until noon, July 11, 2016, to start disclosing who you are buying the AdvoCare product from.

On July 11, 2016, Wynne stipulated two agreements his client would be willing make "to settle this matter":

[M]y client is not currently selling Advocare products on Amazon and will agree to not selling Advocare products in the future to settle this matter. My client will also be glad to agree to discourage Advocare distributors from selling on Amazon should they approach my client in the future.

On July 12, 2016, AdvoCare filed suit against appellants, among others, asserting claims for tortious interference with existing contracts, conspiracy, and money had and received and unjust enrichment. Appellants filed counterclaims seeking damages on the theories of breach of contract and economic coercion/duress.[2] On September 8, 2017, AdvoCare moved for partial summary judgment under Texas Rules of Civil Procedure 166a(c) and 166a(i) on both of appellants' counterclaims. The trial court granted AdvoCare's motion and dismissed appellants' counterclaims with prejudice without stating the basis therefor, on May 21, 2018. On May 15, 2019, AdvoCare gave notice of nonsuit without prejudice of

---

[2] Appellants' filed their first amended rule 13 motion and counterclaims on October 14, 2016.

its remaining claims, which the trial court confirmed by written order dated May 15, 2019. This appeal followed.

## STANDARD OF REVIEW

A party may move for a no-evidence summary judgment if there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. TEX. R. CIV. P. 166a(i); *Fort Worth Osteopathic Hosp., Inc. v. Reese*, 148 S.W.3d 94, 99 (Tex. 2004); *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995). No-evidence summary judgment is proper when:

> (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact.

*Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013). To defeat a no-evidence motion, the nonmovant must produce more than a scintilla of probative evidence raising a genuine issue of material fact as to each challenged element of its cause of action. *Id.* If the nonmovant fails to do so, the trial court must grant a no-evidence summary judgment motion. *See* TEX. R. CIV. P. 166a(i). "Less than a scintilla of evidence exists when it is 'so weak as to do no more than create a mere surmise or suspicion' of a fact." *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) (quoting *Kindred v. Con/Chem., Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)).

To prevail on a traditional motion for summary judgment, a movant must conclusively establish there is no genuine issue of material fact and, therefore, the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). A matter is conclusively established if ordinary minds cannot differ as to the conclusion to be drawn from the evidence. *Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.*, 644 S.W.2d 443, 446 (Tex. 1982). If the movant establishes its right to judgment as a matter of law, then the burden shifts to the nonmovant to either present evidence raising a genuine issue of material fact by producing more than a scintilla of evidence regarding the challenged element, or conclusively prove all elements of an affirmative defense. *Neely v. Wilson*, 418 S.W.3d 52, 59 (Tex. 2013); *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000). More than a scintilla of evidence exists when reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007).

When, as here, a party moves for both a traditional summary judgment under rule 166a(c) and a no-evidence summary judgment under rule 166a(i), we generally first review the trial court's summary judgment under the standards of rule 166a(i). *First United Pentecostal Church of Beaumont, d/b/a the Anchor of Beaumont v. Parker*, 514 S.W.3d 214, 219 (Tex. 2017) (when party moves for both traditional and no-evidence summary judgments, reviewing court first considers no-evidence motion); *Ford Motor Co. v. Ridgeway*, 135 S.W.3d 598, 600 (Tex. 2004). If the

–7–

nonmovant fails to meet its burden under the no-evidence standard, there is no need to address the traditional motion, as it necessarily fails. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013). Any claims that survive the no-evidence review then undergo review under the traditional standard. *Parker*, 514 S.W.3d at 219–20.

When a trial court's order granting summary judgment does not specify the grounds relied upon, the reviewing court must affirm if any of the summary judgment grounds are meritorious. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872–73 (Tex. 2000); *Celanese Corp. v. McGlory*, No. 05-16-00048-CV, 2017 WL 2118783, at *3 (Tex. App.—Dallas May 16, 2017, no pet.) (mem. op.). A corollary to this principle is that an appellant seeking reversal must challenge every ground upon which summary judgment could have been granted, and if the appellant fails to do so, the reviewing court must affirm the judgment based on the unchallenged ground and need not address the merits of the challenged grounds. *Wesby v. Act Pipe & Supply, Inc.*, 199 S.W.3d 614, 617 (Tex. App.—Dallas 2006, no pet.); *Krueger v. Atascosa County*, 155 S.W.3d 614, 621 (Tex. App.—San Antonio 2004, no pet.); *see also Vidaurri v. Harris*, No. 04-16-00453-CV, 2017 WL 2457079, at *1 (Tex. App.—San Antonio June 7, 2017, no pet.) (mem. op.) (error is waived if appellant fails to specifically challenge every possible summary judgment ground).

We review a trial court's summary judgment de novo. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We review the evidence presented in the light most favorable to the nonmovant, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Fielding*, 289 S.W.3d at 848; *Merriman*, 407 S.W.3d at 248.

## ANALYSIS

### *The Trial Court Properly Granted Summary Judgment on Appellants' Breach of Contract Counterclaim*

In their first issue, appellants contend the trial court erred by dismissing their counterclaim for breach of contract. Appellants argue the cease and desist letter "offers not to file a lawsuit if [they] cease their 'illicit activities," and "then states only three (3) conditions to avoid being sued in the final paragraph as follows: You must respond to this letter no later than 5:00 p.m. CST on Tuesday, July 5, 2016. Confirm to us that you will discontinue all sales of AdvoCare products and turn over to us all such products currently in your possession." Appellants assert they "met all three conditions." In response, AdvoCare contends the cease and desist letter was not a contract that could form the basis for a breach of contract claim.

To prevail on a breach of contract claim, the claimant must prove: (1) the existence of a valid contract, (2) performance by the claimant, (3) breach of the contract by the respondent, and (4) damages sustained as a result of the breach.

*Sharifi v. Steen Automotive, LLC*, 370 S.W.3d 126, 140 (Tex. App.—Dallas 2012, no pet.). A legally enforceable contract is formed by an offer, an acceptance, a meeting of the minds, an expression of the terms with sufficient certainty leaving no doubt as to the parties' intentions, and consideration. *Angelou v. African Overseas Union*, 33 S.W.3d 269, 278 (Tex. App.—Houston [14th Dist.] 2000, no pet.). The offer must be accepted in strict compliance with its terms, and each party must communicate its consent to the terms of the agreement. *Id*. The parties must execute and deliver the contract with the intent that it be mutual and binding. *Id.*

In its motion for summary judgment, AdvoCare argued appellants had no evidence to support the following elements of their breach of contract counterclaim: offer, acceptance, a meeting of the minds, and damages.[3] With respect to the meeting of the minds element, AdvoCare argued:

> In order for a contract to be formed, the minds of the parties must meet with respect to the subject matter of the agreement and all its essential terms. "The parties must assent to the same thing in the same sense at the same time." As is amply shown through the discussion below regarding [appellants'] claim for "economic coercion," the Parties had very different understandings of the purpose of the [cease and desist letter]. Clearly the Parties cannot

---

[3] Specifically, AdvoCare argued there was no offer because the cease and desist letter did not promise not to sue or relinquish the right to sue; even if AdvoCare made an offer, appellants did not accept—or comply with the strict terms of the alleged offer—because they did not return any AdvoCare products in their possession and the summary judgment evidence did not show there were no products to return; even if AdvoCare made an offer, appellants "did not accept an offer; at most, they made a counteroffer that was rejected"; there was no meeting of the minds "as to the terms of any alleged agreement, let alone whether there was an agreement intended by the [cease and desist] letter, at all"; and appellants could not establish damages.

> be said to have assented to "the same thing in the same sense at the same time."

(Internal citations omitted.)

The trial court did not identify the basis for the summary judgment on appellants' breach of contract counterclaim. Therefore, we must affirm if any of the grounds are meritorious,[4] or if appellants failed to challenge any ground asserted by AdvoCare.[5]

Here, neither appellants' summary judgment response nor their brief on appeal addressed AdvoCare's argument there was no contract because there was no meeting of the minds. Appellants did not point to any evidence raising a fact issue on whether there was a meeting of the minds sufficient to form the basis of a contract.[6] Because appellants do not address the meeting of the minds ground in their brief on appeal, we must affirm the summary judgment under *Malooly Bros., Inc. v. Napier*, 461 S.W.2d 119, 121 (Tex. 1970). Even if appellants had addressed this ground on appeal, their response to AdvoCare's motion for summary judgment did not address AdvoCare's assertions there was no evidence of a meeting of the minds and, therefore, no contract, and we must conclude summary judgment on their breach of contract counterclaim was supported by at least one ground asserted by

---

[4] *FM Props. Operating Co.*, 22 S.W.3d at 872–73.

[5] *Wesby*, 199 S.W.3d at 617.

[6] To the contrary, counsels' emails on July 1, 5, 6, 7 and 11, 2016, established there was no meeting of the minds as to what the terms of any hypothetical settlement would be.

AdvoCare in its motion for summary judgment. *See Plotkin v. Joekel*, 304 S.W.3d 455, 477 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (trial court did not err by granting summary judgment on any implied breach of contract claim when appellant's response to summary judgment motion did not address three summary judgment grounds, including no evidence of meeting of the minds). Accordingly, we conclude the trial court did not err in rendering summary judgment on appellants' breach of contract counterclaim. Because the meeting of the minds element is dispositive, we need not address AdvoCare's other arguments that the trial court's summary judgment was proper.

We resolve appellants' first issue against them.

### *The Trial Court Properly Granted Summary Judgment on Appellants' Economic Coercion/Duress Counterclaim*

In their second issue, appellants contend the trial court erred by dismissing their counterclaim for economic coercion/duress.[7] According to appellants, the cease and desist letter "made threats of criminal prosecution . . . to coerce [them] to shut down their business." AdvoCare responds, as it argued in its motion for summary judgment, that economic duress is an affirmative defense and not a claim upon which appellants can request affirmative relief in this case; and the cease and desist letter only threatened the filing of a civil lawsuit, which, as a matter of law,

---

[7] Appellants' first amended rule 13 motion and counterclaims asserts a claim for "economic coercion/duress." In this opinion, we refer to this counterclaim as one for "duress" or "economic duress."

does not constitute economic duress. We conclude the cease and desist letter did not threaten criminal prosecution and appellants' duress claim fails as a matter of law.[8]

Economic duress occurs when one party takes unjust advantage of the other party's economic necessity or distress to coerce the other party into making an agreement, by threatening to do something he has no legal right to do. *Simpson v. MBank Dallas*, 724 S.W.2d 102, 109 (Tex. App.—Dallas 1987, writ ref'd n.r.e.); *see also King v. Bishop*, 879 S.W.2d 222, 224 (Tex. App.—Houston [14th Dist.] 1994, no pet.). Generally, economic duress is a defense to the enforcement of a contract. *Leibovitz v. Sequoia Real Estate Holdings, L.P.*, 465 S.W.3d 331, 349 (Tex. App.—Dallas 2015, no pet.); *Schuhardt Consulting Profit Sharing Plan v. Double Knobs Mountain Ranch, Inc.*, 468 S.W.3d 557, 578 (Tex. App.—San Antonio 2014, pet. denied) ("Economic duress occurs when one party takes unjust advantage of the other party's economic necessity or distress to coerce the other party into making an agreement."). Assuming, without concluding, that duress constitutes an independent cause of action, its elements require proof that: (1) a party threatened to do something it has no legal right to do; (2) the threatened action was imminent and of such a character as to destroy the opposing party's free agency without present means of protection; and (3) the threatened action overcame the opposing party's free will and caused it to do something which it would not otherwise have done and

---

[8] Because we conclude AdvoCare's cease and desist letter only threatened the filing of a civil suit and not criminal prosecution, we need not address AdvoCare's first argument.

which it was not legally bound to do. *Simpson*, 724 S.W.2d at 109; *see also Richard D. Davis, LLP v. Sky Lakes Flyers Found.*, No. 14-17-00372-CV, 2019 WL 1030156, at \*7 (Tex. App.—Houston [14th Dist.] Mar. 5, 2019, pet. denied) (mem. op.) (citing *In re Frank Motor Co.*, 361 S.W.3d 628, 632 (Tex. 2012) (orig. proceeding)); *ABB Kraftwerke Aktiengesellschaft v. Brownsville Barge & Crane, Inc.*, 115 S.W.3d 287, 294 (Tex. App.—Corpus Christi-Edinburg 2003, pet. denied); *Brown v. Cain Chem., Inc.*, 837 S.W.2d 239, 244 (Tex. App.—Houston [1st Dist.] 1992, writ denied); *Herndon v. First Nat'l Bank of Trulia*, 802 S.W.2d 396, 399–400 (Tex. App.—Amarillo 1991, writ denied).

Texas courts long have recognized duress can arise from threats of criminal prosecution. *Sims v. Jones*, 611 S.W.2d 461, 462 (Tex. App.—Dallas 1980, no pet.); *see also Weinburg v. Baharav*, 553 S.W.3d 131, 134 (Tex. App.—Houston [14th Dist.] 2018, no pet.). However, the threat to institute a civil suit or even the actual institution of a civil lawsuit does not constitute duress, as a matter of law, even if the threatened party does not have the financial wherewithal to defend against the suit. *Cont'l Cas. Co. v. Huizar*, 740 S.W.2d 429, 430 (Tex. 1987); *see also Wright v. Sydow*, 173 S.W.3d 534, 544 (Tex. App.—Houston [14th Dist.] 2004, pet. denied); *McMahan v. Greenwood*, 108 S.W.3d 467, 482 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). Furthermore, economic duress may be claimed only when the opposing party was responsible for the claimant's financial distress. *Deer Creek Ltd. v. N. Am. Mortg. Co.*, 792 S.W.2d 198, 203 (Tex. App.—Dallas 1990, no pet.).

Whether conduct constitutes duress is a question of law, but whether duress exists in a particular situation generally is a question of fact dependent upon the circumstances surrounding the situation. *Leibovitz v. Sequoia Real Estate Holdings, L.P.*, 465 S.W.3d 331, 349 (Tex. App.—Dallas 2015, no pet.).

Here, appellants failed to meet their burden to present summary judgment evidence raising a fact issue on the first element of economic duress, i.e., that AdvoCare made a threat to do something it had no legal right to do. Recognizing that a threat to file a civil suit does not constitute duress, appellants purport to satisfy this essential element by claiming AdvoCare's cease and desist letter threatened "criminal prosecution" unless appellants "shut down their business."[9] The cease and desist letter, however, did not threaten or even mention criminal prosecution. Nor did it suggest AdvoCare was considering pressing criminal charges against Qattan. Rather, it alerted Qattan that AdvoCare "anticipate[d] litigation" to recover damages for breach of contract and "violations of AdvoCare's agreements," as well as his "induce[ment]" of other "AdvoCare representatives to breach their contracts dragging them into [Qattan's] illegal activities," all of which are civil claims.

The letter described Qattan's conduct in breach of the "Distributor Agreement" and related "Policies, Procedures, and Compensation Plan," including selling "millions of dollars of AdvoCare's products" on Amazon and currently

---

[9] AdvoCare's request that Qattan turn over any AdvoCare products in his possession is not a threat that AdvoCare will do something; it is a request for Qattan to do something.

offering "at least 29 different AdvoCare products" for sale on Amazon. AdvoCare reminded Qattan he was "terminated in 2013 for numerous violations of [his] Contract," and that while his "fraudulent conduct resulted only in [his] termination from AdvoCare," such conduct "remains legally actionable." AdvoCare further "encourage[d Qattan] not to lead others into litigation by encouraging them to provide you with AdvoCare product, or sell products for you." The letter concluded by demanding that Qattan discontinue all sales of AdvoCare products and return any products in his possession, and advising him "AdvoCare will also seek its attorneys' fees, should it be forced to correct your behavior through litigation."

Evaluating the statement, "You must immediately cease and desist from this conduct, or AdvoCare will be forced to file a lawsuit against you," in the context of the entire letter, it is clear the letter did not threaten criminal prosecution, but advised Qattan of its intent to seek a civil remedy for Qattan's alleged continuing breaches of the distributor agreement. Nowhere did the letter threaten appellants with criminal prosecution. Rather, it repeatedly referred to the policies and procedures in Qattan's distributor agreement with AdvoCare, Qattan's multiple alleged breaches of the agreement, and his inducement of other AdvoCare representatives to "breach their contracts."

We conclude AdvoCare did not threaten criminal prosecution in the cease and desist letter. Viewed in the light most favorable to appellants, the evidence is not sufficient to raise a material issue of fact on whether AdvoCare threatened to do

–16–

something it had no legal right to do. Accordingly, we conclude that, as a matter of law, appellants failed to raise a fact issue on the first element of economic duress, and the trial court properly granted summary judgment on their economic duress counterclaim.

We resolve appellants' second issue against them.

*Damages*

Because we conclude the trial court properly granted summary judgment in favor of AdvoCare on appellants' breach of contract and economic duress claims, we need not address appellants' third issue regarding the calculation of their claim for damages.

We affirm the trial court's judgment.


/Ken Molberg//
_____
KEN MOLBERG
JUSTICE


190610f.p05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

VONOCOM, INC. AND IBRAHIM
QATTAN,                    Appellants

No.  05-19-00610-CV         V.

ADVOCARE    INTERNATIONAL,
LP, Appellee

On Appeal from the 429th Judicial
District Court, Collin County, Texas
Trial Court Cause No. 429-02966-
2016.

Opinion delivered by Justice Molberg.
Justices Reichek and Evans
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee ADVOCARE INTERNATIONAL, LP recover its costs of this appeal from appellants VONOCOM, INC. AND IBRAHIM QATTAN.

Judgment entered this 31st day of March, 2020.